IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| H.O.P.E., INC., d/b/a HOPE FAIR HOUSING CENTER, an Illinois Not-for-Profit Corporation AND ROBERT JOHNSON;<br><br>Plaintiffs;<br><br>v.<br><br>B & A ASSOCIATES, L.L.C., B&A PROPERTY GROUP, L.L.C., FINCH & BARRY PROPERTIES, L.L.C., TEAM REALTY SERVICES, L.L.C., VILLAGE PARK OF HOFFMAN ESTATES D/B/A VILLAGE PARK APARTMENTS LLC AND HUNTER ELGIN MANAGEMENT, LLC;<br><br>Defendants. | Case No. 22-cv-874<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs, H.O.P.E. INC d/b/a HOPE FAIR HOUSING CENTER ("HOPE") and Robert Johnson, bring this action against a group of related entities that own and manage residential multifamily dwellings doing business in the State of Illinois through various incorporated entities named as Defendants herein, B&A Associates, L.L.C., B&A Property Group, L.L.C., Finch & Barry Properties, L.L.C., Team Realty Services, L.L.C., Village Park of Hoffman Estates d/b/a Village Park Apartments LLC and Hunter Elgin Management, LLC (collectively, the "Defendants"),

as follows:

### Nature of Action

1. Plaintiff Johnson ("Johnson") and H.O.P.E., Inc. ("HOPE") allege that Defendants intentionally refused to rent an apartment at the Villages on Maple in Lisle, Illinois to Johnson,

1

who has no criminal convictions, based on his race, and allege that Defendants' blanket banning policy concerning renters with a perceived and/or actual criminal history as applied to Plaintiff Johnson has an unlawful disparate impact on Black renters, all in violation of the Fair Housing Act..

2. HOPE undertook a testing investigation of Defendants' application of their blanket ban policy at the Villages on Maple in Lisle, Illinois, the Village Park Apartments in Hoffman Estates, Illinois and Hunters Ridge in Elgin, Illinois. Each of these multifamily complexes have common ownership and management with Finch & Barry Properties, L.L.C. and share the same principal office.

3. This action is brought pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C.3601 et. seq.

4. The United States Department of Housing and Urban Development Office of General Counsel issued Guidance on April 4, 2016, stating "criminal records-based barriers to housing are likely to have a disproportionate impact on minority home seekers," and "criminal history-based restrictions on housing opportunities violate the [Fair Housing] Act if, without justification, their burden falls more often on renters or other housing market participants of one race or national origin or over another."[1]

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this case pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331 and 1343.

---

[1] https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF

6. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391 because Plaintiffs reside within the District and Eastern Division, and the events or omissions giving rise to the claims occurred in the District.

## Parties

7. Plaintiff H.O.P.E., Inc., doing business as HOPE Fair Housing Center ("HOPE"), is a private, non-profit corporation incorporated under the laws of Illinois with its principal place of business located at 202 W Willow Ave Suite 203, Wheaton, IL 60187, DuPage County, Illinois.

8. HOPE's mission includes advocating for the housing rights of communities of color. HOPE works to eliminate housing discrimination and to ensure equal opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, training, advocacy, investigation of fair housing violations, and enforcement.

9. Plaintiff Robert Johnson is a citizen of the United States residing in Naperville, Illinois. Mr. Johnson's race is Black.

10. Defendants B & A Associates, L.L.C., B&A Property Group, L.L.C., TEAM Realty Services, L.L.C. are all Limited Liability Companies registered in Illinois and Colorado doing business in Illinois with their principal offices located at 1305 Wiley Road, Suites 104 and 106, Schaumburg, IL. Defendant Village Park of Hoffman Estates d/b/a Village Park Apartments, LLC is a Colorado Limited Liability Company doing business in Illinois with its principal offices located at 1305 Wiley Road Suite 104, Schaumburg, IL. Defendant Finch & Barry Properties L.L.C. is a Colorado Limited Liability Company doing business in Illinois with its principal office located at 1305 Wiley Road, Suite 106, Schaumburg, Illinois. Defendant Hunter Elgin Management, LLC is an Illinois Limited Liability Company with its principal office located at 1305 Wiley Road, Suite 104, Schaumburg, Illinois.

**Factual Allegations**

11. In August of 2014, Plaintiff Johnson moved into the Villages on Maple at 1769 Robin Lane, Lisle, Illinois. Mr. Johnson resided at Villages on Maple in that unit without incident until 2017, and then moved to another apartment complex not associated with any of the defendants.

12. In August of 2019, after a background and credit check, Mr. Johnson moved back into Villages on Maple where he lived without incident until March 2021. In February 2021, the property manager at Villages on Maple, Anthony Ewald, who was the manager at Villages on Maple during all of Mr. Johnson's tenancies there, asked Mr. Johnson if he would be renewing his lease. Mr. Johnson told the Mr. Ewald that he would like to downsize to a one-bedroom unit based on a change in his family circumstances. The property manager agreed, the manager and Johnson agreed on a particular one-bedroom unit, and the manager asked that Mr. Johnson remain in his current unit a few weeks after the expiration of his current lease, while they renovated the agreed upon one-bedroom unit. Mr. Johnson was informed that the property manager would run a new credit report and background check.

13. On or about March 24, 2021, the property manager dropped off a new application for Mr. Johnson to complete, which he did on March 26, 2021. On March 31, 2021, the property manager informed Mr. Johnson that something came up on his background check and that he had 30 days to get out of his current unit.

14. The purported basis for the property manager's change of mind was an old arrest record from May 31, 2015 for possession of a licensed gun by Mr. Johnson, who was a security guard at the time. The case against Mr. Johnson was dismissed outright in May 2016.

15. Mr. Johnson called Ewald the next day and asked if he could stay in his home. Mr. Ewald told plaintiff Johnson "No, you have to leave". Mr. Johnson tried to tell the property manager that the 2015 charge had been dismissed and did not result in a conviction. Mr. Johnson went to the management office with the circuit clerk of the court representative on the phone letting Ewald know that the case against Mr. Johnson had been dismissed before any conviction. Ewald told Mr. Johnson that even if his case was dismissed, he would not let him stay. When Mr. Johnson told Ewald that he shouldn't have to move out, Ewald told him that he didn't have to, but that he would then charge Johnson double the rent and that he knows that Johnson could not afford double-rent, that he wanted him out and there was nothing Johnson could do about it.

16. Mr. Johnson was as a result of Defendants' discriminatory unlawful conduct forced to move out of his unit at the Villages on Maple during the middle of the Covid-19 pandemic crisis.

17. Mr. Johnson contacted plaintiff HOPE for help with his concern that his fair housing rights had been violated. After talking with Mr. Johnson, HOPE began an investigation into the matter, including having its testers contact Villages on Maple, Village Park Apartments and Hunters Ridge, all owned and operated by Defendants. HOPE tested each of these multifamily complexes because it had determined that there was a common management/ownership between them, and they were all in HOPE's service area.

18. On June 13, 2021, a tester contacted Villages on Maple and inquired about a unit. Once the tester was told that he would have to pay $50 per adult for a criminal background and credit check, he asked if people with a "felony charge" would be accepted. The agent told the tester no. When the tester further asked even if the felony charge was five years ago, the Villages on Maple agent said "No felonies at all ever".

19. On July 14, 2021, a different tester contacted Villages on Maple and was also told he would be rejected if there were any felony charges at all, regardless of how long ago they occurred and would also be rejected if he had a misdemeanor charge in the last five years.

20. On June 22, 2021 and July 16, 2021 respectively, two different testers contacted Village Park Apartments, Hoffman Estates, Illinois. The first tester, Black, was told that they would most likely be declined for a felony charge without a conviction that was within seven years. The second tester, White, was told that she may be declined if the felony charge without conviction was within five years.

21. On July 19, 2021, a tester contacted Hunters Ridge Apartments, Elgin, Illinois and was told by the agent that if a felony charge showed up on the background check it would be an automatic denial and provided the tester with a paper that appears to provide the tenant selection criteria for Hunters Ridge Apartment, which included a section identified as "Immediate Disqualification" that included this disqualifier; "Criminal Records including but not limited to Felony within 100 years, serious misdemeanors within 3-5 years". (Exhibit A)

22. Defendants' blanket banning policy concerning renters with a perceived and/or actual criminal history has a disparate impact on Black renters.

23. The census data for each of the locations of defendants' named properties shows that Black people are arrested at a disproportionately higher level than their White counterparts.

24. In the Village of Lisle, the population of Black people is 4.3 percent of the total Village population, but, during the period between June 2019 – July 2021, 27.5 % of the Village arrests were of Blacks.

25. In the City of Elgin, the Black population is 5.9% while the number of Black arrests was 25% for the period between 2019 and July 2021.

26. The Village of Hoffman Estates has a Black Population of 4.7%, but had a Black arrest rate of 28% for the period between 2019 through July 2021.

27. Defendants' application of its blanket ban policy to Plaintiff Johnson and threats to double his rent if he did not voluntarily vacate his home constitute intentional discrimination based on race.

28. Defendants' blanket ban on renting to persons with arrests or perceived or actual criminal histories of any kind has a disparate impact on Black citizens in the locations where Defendants' policy is applied.

29. There is no substantial, legitimate, nondiscriminatory interest of Defendants to justify their blanket ban policy, including as applied to Plaintiff Johnson.

30. HUD Guidance, citing *Schware v. Bd of Bar Examiners,* 353 U.S. 232, 241 (1957), states, "[a] housing provider with a policy or practice of excluding individuals because of one or more prior arrests (without any conviction) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest." https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF

31. Even a blanket rental ban policy based on prior conviction, no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then, violates the Fair Housing Act. *Id.*

32. Defendants' refusal to continue to rent to Mr. Johnson is particularly egregious and illustrates the unfair disparate impact of their blanket ban on tenants with arrest records as Mr. Johnson lived without incident on two separate occasions at one of Defendants' complexes, including beginning a period of tenancy after the arrest, despite his arrest record that resulted in zero convictions or findings of guilt.

**Damages**

33. Plaintiff Johnson has suffered loss of his civil rights, monetary losses, lost housing opportunity, emotional injury, humiliation, and embarrassment as a result of Defendants' discriminatory policies and conduct.

34. Plaintiff HOPE has been directly and substantially injured as a result of the foregoing discriminatory acts of Defendants in that:

> A. HOPE has been frustrated in its mission to eradicate discrimination in housing and in carrying out the programs and services it provides, including advocating for the housing rights of communities of color, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices;
>
> B. HOPE's limited resources have been diverted from providing these services to efforts directed to investigate, address, and counteract Defendants' discriminatory conduct.

**Fair Housing Act Violation §3604**

35. Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-28 as if fully set forth herein.

36. In violation of 42 U.S.C. §3604(a) and (b), Defendants' policies and discriminatory conduct has made a dwelling unavailable to Plaintiff Johnson and discriminated against him on the basis of race in the terms, conditions and privileges of rental, or in the provision of services or facilities, including but not limited to the following:

    A.    Enforcing a blanket rental ban on potential renters;

    B.    Refusing to engage in a process with Mr. Johnson regarding his dismissed charges that resulted in no conviction or finding of guilt;

    C.    Threatening to double Plaintiff Johnson's rent if he did not move out, despite prior successful tenancies;

    D.    Demanding that Plaintiff Johnson vacate his unit during a pandemic; and

    E.    Refusing to rent the one-bedroom unit to Mr. Johnson as promised.

Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

    A.    Enter a declaratory judgment that defendants' unlawful discriminatory and statements have injured Plaintiffs in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. §3604;

    B.    Award such damages under the Fair Housing Act of 1968, as amended, as will fully compensate Plaintiff for his injuries, monetary and non-monetary, incurred as a result of Defendants' discriminatory conduct as alleged herein;

    C.    Award Plaintiff HOPE damages under the Fair Housing Act of 1968, as amended, resulting from frustration of mission and diversion of resources and any other relief permissible under law;

    D.    Award punitive damages as are proper under law to punish Defendants for their malicious and recklessly indifferent conduct alleged herein and to effectively deter similar conduct in the future, pursuant to 42 U.S.C. §3613(c)(1);

E. Award Plaintiffs their costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. §3613(c)(2);

F. Award Plaintiffs all other applicable relief available to them under the Fair Housing Act, including but not limited to equitable relief as appropriate to remedy past and future violations of the Fair Housing Act; and

G. Grant such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Kelly K. Lambert*
One of Plaintiffs' Attorneys

Dated: February 17, 2022

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60134
(630) 333-9144